RUTH SPANGLER, GUARDIAN, APPELLEE, v. JERRY A. BROWN, APPELLANT.

289 N. W. 839

FILED FEBRUARY 2, 1940. No. 30758.

*Frederick M. Deutsch* and *W. J. Hammond,* for appellant.

*J. J. Harrington* and *Julius D. Cronin, contra.*

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

Plaintiff, guardian of Walter Spangler, a minor child, over the age of 14 years, and less than 15 years at the time of trial, brought this action for injuries sustained by her ward, charging defendant with negligence in operating his automobile and striking a horse being ridden by her ward from school on September 7, 1938, at about 4:30 p. m. The jury returned a verdict in favor of the plaintiff in the

sum of $2,000. Motion for a new trial was overruled. The defendant appeals.

On the day in question Walter Spangler, living with his brother, was riding his brother's horse to and from school, as was his custom. The horse was part Arabian, six or seven years old, weighed 950 to 1,000 pounds, and of gentle disposition. The boy would go from his brother's home one-fourth of a mile west on the section highway, then turn southwest onto an angling road, until striking the section-line to the west, and then proceed south. The schoolhouse was located on the southwest corner of the section. The road to the schoolhouse was an angling road. On the day in question the boy returned home on the same road. After talking to a friend in the meadow, he loped the horse until he reached a hill, and walked the horse from that point to a gateway. The hill was between the hay meadow and the angling road which joins the highway. The boy proceeded down the hill to the northeast out onto the highway, walking his horse. After leaving the angling road which crosses the meadow, he then went onto the highway, which runs east and west and is 24 feet from shoulder to shoulder. The road is sandy, has a track in the proximate center thereof, is rough and contains some ruts. The boy proceeded east on the right or south shoulder of the road, walking the horse. He noticed at a distance of about three-quarters of a mile an automobile coming toward him from the east, traveling in or near the middle of the road on the north side of the traveled portion of the highway. The horse continued walking a distance of 11 to 13 feet south of the center of the road until the car drew close, when the horse stopped, as was its habit, to permit the car to pass. The boy estimated the speed of the car at from 50 to 60 miles an hour. One witness testified that the defendant stated he was going 50 miles an hour. This statement the defendant denied, and he testified that his speed was 30 to 35 miles an hour. When the car had proceeded within a distance of 8 or 10 feet, it struck a rut, then turned suddenly in a southwesterly direction, about a 45-degree angle,

striking the left side of the horse and picking up the horse and rider, with the back of the horse toward the radiator, and with the rider's head down close to the front wheel of the automobile, the rider holding onto the horse's mane. The rider and horse were carried for a distance of 105 to 115 feet, and finally were thrown into the ditch on the north side of the road, which would be a distance of 10 to 12 feet.

The opening, sometimes called the gap and referred to as the "trail road," appears to be 12 to 15 steps from post to post, the estimates of the witnesses varying on this point, some placing the distance at as much as 45 feet. Wire has been removed and laid back, to permit the passage of vehicles and animals through this opening. According to the plaintiff's evidence, the accident occurred 150 to 225 feet east of the opening. The horse and rider were carried on the front of the defendant's automobile 105 to 115 feet west. The horse in some manner was caught or thrown onto the automobile, with its head in a forward position. After the accident, the boy stated, he was 60 feet east of the opening. At the time of the accident he was wearing a cap and carrying a dinner bucket which he lost.

About 15 or 20 minutes after the accident, Walter's sister and brother were driving on the same highway, and as they proceeded west the sister saw the horse lying on the north side of the road in the ditch, with its head facing south and its feet to the east. They started to look for Walter, went across the road and looked to see where the horse came out of the opening, then continued along east on the south side of the road for quite a distance, gauging the distance by the length of the courtroom, estimated to be 50 feet, stating it was three or four times its length. Arriving at this point, they found no more hoof tracks, but saw tracks where the horse apparently stopped. The sister observed the hoof marks along the south shoulder of the grade, extending over to the opening into the hay meadow east for a distance of 160 to 235 feet where the hoof marks stopped. The tracks of the automobile were fresh, came from an

easterly direction, "splitting the track;" that is, as if proceeding down the road generally about the middle at a point 10 to 20 feet east of the place where the hoof marks stopped. The tracks of the car then seemed to veer to the southwest over to the hoof marks from a distance of 10 to 20 feet. In this position the car tracks were going toward the southwest; then apparently the car straightened back into the road, and none of the car tracks appeared south of the ditch. The sister saw Walter's cap there, picked it up, and further down in the ditch lay his dinner bucket, with one bail off. She found an ornament, which will be later described, impregnated into the left hip of the horse the length of four or five inches. The horse was lying in the ditch on the north side, with its head facing south and its feet toward the' east. This evidence is corroborated by the brother, who pulled the ornament out of the horse's left hip. He testified it had been implanted into the hip for a distance of about three inches. The injuries to the horse consisted of both hind legs broken at about the height of the bumper of the car, its left hip wounded, and the animal had to be killed. The injuries suffered by the boy were: The femur bone on the left leg was broken diagonally; his left hip dislocated, and injuries to his left side, left arm and shoulder.

The defendant, a man 53 years old, engaged in the life insurance and real estate business in Norfolk, and owner of land in the vicinity of the accident, testified, in substance, that the road in question was an average country road, with a grade thrown up and a track down about the middle of the road, which was sandy, with some chuckholes in it. When the defendant's automobile, which was a 1936 Buick coach, weighing 3,200 to 3,300 pounds, approached within 30 to 40 feet east of the opening or gap, Walter came from the hay meadow through the opening at a gallop in front of the car. Defendant stated he immediately applied his brakes, which were in good working condition, and stopped as soon as he could, but he was unable to avoid hitting the boy; that the bumper of his automobile struck the hind

legs of the horse as it was going north; that the horse naturally jumped as the car struck it, and proceeded to the north side of the road, and as it jumped it threw the boy; that his car came to a complete stop in about six feet after striking the boy; that immediately after the accident the boy was lying just north of the car; the horse was lying in the north ditch slightly in front or west of the boy. There is also testimony that a boy's cap was lying four or five feet from the horse, but was not picked up. Defendant stated the boy said to him, in substance, that his mother had told him not to gallop the horse through the opening in the meadow. The boy was taken to the home of defendant's tenant, and from there to a doctor for treatment. Other witnesses testified that the position of the horse in the north ditch after the accident was about the center of the distance between the two posts, constituting the opening or gap.

There is claim made with reference to shrubs and a growth of box elders, and a shelter belt planted in 1936, about 10 rods in width, consisting mostly of· cottonwoods, along the road, as shown by the exhibits, which would have a tendency to obscure the vision of a driver proceeding west on this road and approaching the opening to the angling road into the meadow. However, this evidence is in direct conflict. In the event that plaintiff's theory of the accident is to be believed, such evidence is not material.

The evidence further shows that shortly after the accident, in the presence of two uncles, his mother and sister, the boy made a certain written statement to the defendant's counsel, which is in evidence; and that the statement is at variance with the testimony of the boy at the trial. In any event, his evidence, in its entirety, is for the jury, and they are the judges of its credibility.

The defendant first complains of error in that the verdict and judgment are contrary to the indisputable physical facts. In this connection, the evidence shows that the height from the surface of the road to the top of the bumper of the car is approximately 16 inches, the bumper extending

out from the right and left fenders three to four inches, and is about eight inches in front of the radiator grill. The distance from the radiator, as distinguished from the grill, out to the bumper is 16 inches; the radiator sets back of the grill in a radiator shell, a distance of eight inches; the bumper extends out eight inches in front of the grill. The grill is perpendicular.

The damage to the car after the accident consisted of the following: The radiator grill was broken, the bumper had been damaged, bent at a distance of one and a half feet from its left (and south) end, shoved in, pushing holes in the radiator; that shoved the radiator back; the radiator in turn was shoved back against the fan. The left front lamp, located between the radiator and the left front fender, was broken, and there was a slight dent in the left front fender. The automobile would not operate under its own power, due to damage to the radiator, causing it to leak, making the motor too hot. The top of the radiator was 49 inches above the traveled surface; the hood was not damaged. One of the lights between the radiator and shell was damaged. The distance from the ground to the radiator is four feet, one inch. The emblem, heretofore referred to, is molded into part of the grill and sets back from the front of the grill. The contention is that, before the contact with the ornament could be had, the horse would have to hit against the radiator shell and the grill and be shoved backward.

We have detailed the pertinent facts, including the physical facts, relating to this accident. From a consideration thereof, we cannot say that the physical facts are so conclusive as to bar submission of the plaintiff's case to the jury. The decisions cited by the defendant under this assignment of error are applicable if the facts so warrant, but such is not this case.

Defendant complains of certain instructions of the trial court as being prejudicial. The court gave an instruction, defining the duty of Walter Spangler in approaching and entering upon the highway from the trail road, stating that

his failure to abide by such duty would constitute negligence. The objection is that this instruction assumes a fact as established which is material to the case, when the evidence with reference thereto is in conflict; citing *Howe v. Provident Loan & Investment Co.*, 130 Neb. 469, 265 N. W. 255. In the instant case, the jury, by agreement of the parties and at the direction of the court, had the opportunity to view the premises. Such observation partakes of the nature of evidence. They saw the road in question, which was referred to in the instruction.

"Where an objection is made in behalf of appellant in respect to an instruction given by the trial court, the judgment will not be reversed, when the instructions, considered in their entirety, are not prejudicial to the lawful rights of appellant." *Lowell v. Buffalo County*, 123 Neb. 194, 247 N. W. 452.

We have carefully examined the instructions and conclude that, when considered as a whole, they properly and adequately state the law, and, under all the circumstances as developed by the record, are not prejudicial. The charged negligence of the respective parties in the instant case were questions for the jury's determination. See *Frish v. Swift & Co.*, 97 Neb. 707, 151 N. W. 165.

"A verdict of a jury in a law action based upon conflicting evidence will not be disturbed on appeal unless clearly wrong." *Potach v. Hrauda*, 132 Neb. 288, 271 N. W. 795.

The judgment of the district court is right and is

AFFIRMED.